UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STANLEY L. FELTON,
*now known as G'esa Kalafi,*

           Plaintiff,

v.                                                    Case No. 24-cv-1489-pp

KEN DAWSON, *et al.*,

           Defendants.

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS (DKT. NO. 9), ADOPTING JUDGE DRIES'S RECOMMENDATION (DKT. NO. 8) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

        On November 18, 2024, the court received from plaintiff Stanley L. Felton, now known as G'esa Kalafi, a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his First Amendment and Equal Protection rights. Dkt. No. 1. On January 2, 2025, Magistrate Judge Stephen C. Dries screened the complaint, determined that it failed to state a claim and gave the plaintiff an opportunity to amend his complaint to cure the deficiencies Judge Dries identified. Dkt. No. 5. The plaintiff filed an amended complaint, dkt. no. 7, and Judge Dries issued a report recommending that this Article III court dismiss the amended complaint for failure to state a claim for relief and assess the plaintiff a strike under 28 U.S.C. §1915(g), dkt. no. 8. The plaintiff timely filed objections to Judge Dries's recommendation. Dkt. No. 9. The court will overrule the plaintiff's objections, adopt Judge Dries's recommendation and dismiss the case for failure to state a claim.

## I. Background

### A. Amended Complaint

The amended complaint names as defendants Ken Dawson, ICSolutions and John and Jane Does. Dkt. No. 7 at ¶¶4–6. The plaintiff alleges that the individual defendants work at ICSolutions Advance Technology Company, a private company headquartered in San Antonio, Texas. Id. at ¶¶4, 6.

The plaintiff alleges that on March 14, 2024, he was incarcerated at Green Bay Correctional Institution, which was a test facility for tablets that ICSolutions provided free of charge to all incarcerated persons. Id. at ¶7. The tablets, which allowed incarcerated persons to make phone calls, came with a charger and earbuds. Id. The plaintiff alleges that the earbuds were defective, which he did not learn until after he purchased several pairs. Id. at ¶¶9–10.

The plaintiff filed a complaint about the defective earbuds with the Wisconsin Bureau of Consumer Protection. Id. at ¶¶12–14. He alleges that on August 28, 2024, defendant Dawson responded to his complaint and acknowledged that ICSolutions had discovered in April 2024 that it had delivered a batch of defective earbuds to incarcerated persons. Id. at ¶16. Dawson explained that ICSolutions had shipped replacement earbuds to all affected sites for staff to provide to incarcerated persons at no charge. Id. Dawson said that the plaintiff had "made around 50 successful calls on his tablet," suggesting the problem had been resolved. Id.

The plaintiff alleges that the next day, August 29, 2024, he made a two-minute phone call to a friend using his tablet and discussed the murder of a

black man by a white man at Green Bay two days earlier. Id. at ¶¶17–18. The plaintiff told his friend that the murder could be the result of "racial tension in the environment and would probably be retaliation" because a similar murder had happened at Green Bay within the last two years. Id. at ¶20. He says that several other incarcerated persons at Green Bay were discussing this incident during phone calls with their friends and families. Id. at ¶22. The plaintiff claims that ICSolutions retaliated against him for his complaint about the earbuds by flagging and forwarding to prison officials his phone call discussing the murder. Id. at ¶24. He says that Green Bay administration sent him to restricted housing, but that ICSolutions did not forward any other incarcerated persons' calls to prison staff, and no other incarcerated persons were sent to restricted housing based on a forwarded call from ICSolutions to prison staff. Id. at ¶¶25–26.

The plaintiff alleges that ICSolutions and its employees retaliated against him in violation of the First Amendment for filing the complaint about the defective earbuds. Id. at ¶37. He claims that the defendants forwarded his August 29, 2024 phone call to prison authorities "with the intent to have [him] investigated and punished for his protected speech." Id. at ¶38. He also claims that the defendants violated his right to equal protection under the Fourteenth Amendment because they did not forward any other incarcerated person's phone calls about the August 27 murder to prison authorities. Id. at ¶41.

B.  Report and Recommendation

Judge Dries first rejected the plaintiff's First Amendment claim that the defendants had retaliated against him because he filed the complaint about the defective earbuds. Dkt. No. 8 at 4. Judge Dries explained that to state a First Amendment claim, a plaintiff must allege that he engaged in protected activity, that he suffered a deprivation that would likely deter future protected activity and that his protected activity "'was at least a motivating factor in the defendants' decision to take the retaliatory action.'" Id. (quoting Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015)).

Judge Dries concluded that the plaintiff's claim failed at the second element—the plaintiff did not allege that he suffered a deprivation that would likely deter future protected conduct. Id. Judge Dries found that the plaintiff, as an incarcerated person, "has no privacy interest in the contents of his phone calls" because Wisconsin Department of Corrections policies notify incarcerated persons that their non-attorney calls are recorded and may be used for disciplinary purposes. Id. at 4–5 (citing Division of Adult Institutions Policy No. 306.00.01 and Wis. Stat. DOC §309.39(6)). Judge Dries concluded that the facts that the plaintiff's call was monitored and recorded, and that that monitoring and recording was used for disciplinary purposes, were not "a deprivation that would likely deter First Amendment activity in the future—it is merely an example of officials acting in accordance with the numerous notices provided to inmates." Id. at 5. Judge Dries also found that the deprivation about which the plaintiff complained was not ICSolutions monitoring and

flagging his call but the prison disciplining him "because of what he said during the call." Id. at 5. Judge Dries concluded that only the prison could discipline the plaintiff, so only prison officials (not ICSolutions employees) could be held personally responsible for that alleged deprivation. Id. (citing Williams v. Shah, 927 F.3d 476, 482 (7th Cir. 2019)).

Judge Dries next rejected the plaintiff's class-of-one equal protection claim. Id. He explained that to proceed on that claim, the plaintiff was required to allege "that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (citing Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012)). Judge Dries observed that the plaintiff had no knowledge of what other calls ICSolutions did or did not flag; he knew only whether other incarcerated persons had been *disciplined* based on their phone calls. Id. at 5–6. Judge Dries explained that was insufficient to form the basis of an equal protection claim. Id. at (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Judge Dries also observed that class-of-one claims do not typically arise where the defendant is "'exercising discretionary authority based on subjective, individualized determinations.'" Id. at 6 (quoting Engquist v. Or. Dep't of Agric., 553 U.S. 591, 602 (2008)). He explained that in those situations, "'treating like individuals differently is an accepted consequence of the discretion granted.'" Id. (quoting Engquist, 553 U.S. at 603). Judge Dries recounted that the prison had given ICSolutions "discretion to flag potentially problematic phone calls to be reviewed by prison officials." Id. He did not allow the plaintiff to proceed on a

5
Case 2:24-cv-01489-PP    Filed 03/31/25    Page 5 of 12    Document 10

claim challenging how ICSolutions exercised that discretion because doing so "would undermine the very discretion ICSolutions has been entrusted with." Id.

### C. The Plaintiff's Objections

The plaintiff first disputes Judge Dries's conclusion that he did not state a First Amendment claim of retaliation. Dkt. No. 9 at ¶7. He says that he alleged in his amended complaint that he has not used the ICSolutions tablet to talk to his friends and family since August 29, 2024 because he fears further retaliation. Id. He asserts that his "act of self-censorship is surly [*sic*] a deterence [*sic*] to future 1st amendment activity" because his friends and family "are [his] support system." Id. The plaintiff says that Judge Dries screened and dismissed a previous First Amendment claim that the plaintiff had brought because the plaintiff did not allege that he had self-censored his calls out of fear of future discipline. Id. at ¶8 (citing Felton v. Johnson, Case No. 22-cv-1352-scd (E.D. Wis.), Dkt. No. 7 at 4). He claims that Judge Dries contradicted what he (Judge Dries) had said in the previous case that alleged "pretty much the same set of facts." Id. He asserts that he showed that his First Amendment activity "was at least a motivating factor in the defendants' decision to take the retaliatory action" based on the timing of his complaint about the earbuds and the prison's discipline. Id. at ¶9.

The plaintiff also objects to Judge Dries's recommendation that this court dismiss the plaintiff's class-of-one equal protection claim. Id. at ¶10. He says that Judge Dries incorrectly determined that he lacks personal knowledge of what other calls ICSolutions flagged and forwarded to prison officials. Id. The

plaintiff asserts that the allegations in his amended complaint were based on his "personal knowledge" from "hearing the conversations amongst inmates" and from "having direct and indirect conversations with them himself." Id. The plaintiff contends that "if ICSolutions flagged other calls and did not forward them to Green Bay Administration," that would "further substantiate [his] claim" and show "they specifically sought out to target plaintiff for his grievance against them." Id.

The plaintiff adds that if ICSolutions did indeed flag other calls but did not forward them to Green Bay officials, "it would bring into question this so-called discretion they've been entrusted with to monitor and flag problematic calls." Id. He says that would suggest the defendants chose "to monitor and flag calls of inmates who file grievances against them but ignore the other security concern calls because those inmates are not speaking bad about their company." Id. The plaintiff concludes that he pleaded sufficient facts in his amended complaint to proceed on his claims. Id. at 9.

## II.   Legal Standard

When a magistrate judge submits to the district judge proposed findings and recommendations under 28 U.S.C. §636(b)(1), the parties have fourteen days to object to the magistrate judge's report and recommendation. If a party objects, the district judge must make a *de novo* determination of the portions of the report and recommendation to which the party objects. 28 U.S.C. §636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The court

7

received the plaintiff's objections on March 3, 2025, eleven days after Judge Dries issued his report and recommendation, so the plaintiff timely filed his objections.

## III. Discussion

The court agrees with Judge Dries's recommendation to dismiss the claims in the amended complaint. First, the plaintiff says Judge Dries incorrectly determined that ICSolutions reporting his calls was not a deprivation likely to deter his future protected activity. But whether the plaintiff was deterred from making future calls using the ICSolutions tablet is immaterial because the plaintiff did not suffer a First Amendment deprivation. The plaintiff has not objected to Judge Dries's conclusion that the plaintiff knew that his non-attorney calls made at Green Bay would be monitored and could be used as a basis for discipline. The discipline the plaintiff received because of what he said during one of those monitored conversations is not an actionable deprivation for purposes of a First Amendment retaliation claim. See Rowell v. Drost, Case No. 20-CV-110, 2024 WL 166100, at *8–*9 (W.D. Wis. Jan. 16, 2024) (citing United States v. Sababu, 891 F.2d 1308, 1329 (7th Cir. 1989)) (holding that "where a prison provides notice than an inmate's calls are monitored, he cannot have a reasonable expectation of privacy in those communications"). Because the plaintiff's allegations do not show that he suffer a cognizable deprivation, he has not stated a First Amendment retaliation claim.

Even if the plaintiff had stated a proper First Amendment claim, he has not objected to Judge Dries's alternative ruling that the ICSolutions defendants

8

were not personally responsible for the discipline the plaintiff received based on his conversations—the true deprivation about which he complains—and that they merely reported the plaintiff's conversation to prison officials. The plaintiff appears to understand the requirement to show how each defendant was personally responsible for a violation under §1983 because he has filed another lawsuit about these calls, seeking to hold responsible the prison officials who he says wrongly disciplined him for his August 29, 2024 conversation. See Felton v. Matushak, Case No. 24-cv-1588 (E.D. Wis.), Dkt. No. 1. This court will address the substance of that complaint in a separate order in that case. But the court agrees with Judge Dries that the plaintiff cannot sue ICSolutions or its employees for the discipline he received because ICSolutions did not impose that discipline; it only reported his conversation to prison officials. And as Judge Dries correctly explained, reporting the plaintiff's call was not a violation of the plaintiff's First Amendment rights; it was a routine operation in accordance with prison policy. See Dkt. No. 8 at 5; Rodriguez v. Blaedow, 497 F. Supp. 558, 559–60 (E.D. Wis. 1980) ("[T]here is no question that prison officials could properly monitor the telephone call of the plaintiff as part of a system of security to control the plaintiff's communication with outsiders.").

The court also finds that Judge Dries correctly rejected the plaintiff's class-of-one equal protection claim. The plaintiff argues that Judge Dries incorrectly determined that the plaintiff had no personal knowledge of whether ICSolutions forwarded similar calls from other incarcerated persons to prison officials or whether officials disciplined those persons for making similar calls.

He maintains that he hears things in the prison and has had conversations with other incarcerated persons that provided him personal knowledge of these details. But it is not plausible that, simply by overhearing things and having conversations in the prison, the plaintiff could have acquired personal knowledge of *every* call that ICSolutions monitored, *every* instance where ICSolutions flagged a call for prison officials and *every* decision that Green Bay officials made regarding whether to discipline an incarcerated person. His unsupported allegations about these calls do not provide a sufficient basis for a class-of-one equal protection claim under §1983. See Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The plaintiff then suggests that *if* ICSolutions flagged other incarcerated persons' calls but did not report them to Green Bay officials, it would strengthen his claim against ICSolutions. This hypothetical assertion seems to confirm that the plaintiff *does not* have personal knowledge about which calls ICSolutions flagged and forwarded to prison officials and which it did not. And even if his suppositions are correct, the plaintiff acknowledges that ICSolutions could not possibly listen to thousands of calls from incarcerated persons every day. Nor could one expect that ICSolutions would monitor, flag and pass on to prison officials every suspicious call or conversation. Some calls would be left out given the nature of ICSolutions's call monitoring and the impossible task of catching and reporting every potentially problematic conversation. That ICSolutions' discretionary call monitoring is necessarily imperfect does not provide the plaintiff a basis for a class-of-one claim. See Engquist, 553 U.S. at

603–04 (explaining that class-of-one equal protection claims cannot be brought to challenge "what in its nature is a subjective, individualized decision [on the basis] that it was subjective and individualized").

IV. **Conclusion**

The court **OVERRULES** the plaintiff's objections. Dkt. No. 9.

The court **ADOPTS** Judge Dries's recommendation. Dkt. No. 8.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).[1]

The court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend that deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff

---

[1] This is the second time a court has dismissed one of the plaintiff's cases for failure to state a claim. See Hashim, *et al.* v. Berge, *et al.*, Case No. 01-cv-314, Dkt. No. 6 (W.D. Wis. Sept. 25, 2001).

seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court without prepaying the full filing fee (except a petition for *habeas corpus* relief) unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of March, 2025.

                                           **BY THE COURT:**

                                           **HON. PAMELA PEPPER**
                                           **Chief United States District Judge**